**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HENRY LOUIS CARR,

       Petitioner,

v.                              Case No. 2:11-CV-10539

CARMEN PALMER,

       Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Following a jury trial in the Saginaw County Circuit Court, Petitioner Henry Louis

Carr was convicted of first-degree premeditated murder,[1] conspiracy to commit first-

degree premeditated murder,[2] unlawful discharge of a firearm from a motor vehicle,[3]

carrying a weapon with unlawful intent,[4] delivery of cocaine,[5] felon in possession of a

firearm,[6] and felony firearm.[7]  Petitioner is currently incarcerated at the Carson City

Correctional Facility in Carson City, Michigan. He now brings this *pro se* petition for

---

    [1]  Mich. Comp. Laws § 750.316(1)(a); Mich. Stat. Ann. 28.548(1)(a).

    [2]  Mich. Comp. Laws §§ 750.157a; 750.316(1)(a); Mich. Stat. Ann. 28.354(1)(a);
28.548(1)(a).

    [3]  Mich. Comp. Laws § 750.234a; Mich. Stat. Ann. 28.431(1).

    [4]  Mich. Comp. Laws § 750.226; Mich. Stat. Ann. 28.423.

    [5]  Mich. Comp. Laws § 333.7401(2)(a)(iv); Mich. Stat. Ann. 14.15(7401)(2)(a)(iv).

    [6]  Mich. Comp. Laws § 750.224f; Mich. Stat. Ann. 28.421(6).

    [7]  Mich. Comp. Laws § 750.227b; Mich. Stat. Ann. 28.424(2).

issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons that

follow, the petition will be denied.

## I. BACKGROUND

On October 22, 2006, Denadre Stewart was murdered in Saginaw, shot to death

in broad daylight on the street.

Erisha Joshua testified that Denadre Stewart was her little brother.  Joshua heard

gunshots and then saw a green truck drive past.  She testified that she heard one

gunshot, then a pause, before hearing several other gunshots fired rapidly.  Joshua

then saw her brother lying on the ground, with a gunshot wound to his face.  She told

the police that Michael Brooker and Napoleon Tinsley were involved, because she had

heard other persons mention the men as possible suspects, but she later told the police

that she did not see who had shot her brother.  (Tr. III, pp. 15-23).  Calvin Joshua

testified that Denadre Stewart, also known as "Six-Nine", was his cousin.  Calvin heard

a gunshot and ran over to Grant Street, where he saw that his cousin had been shot.

(*Id.,* p. 102-104).

Another witness, Lynn Greer, testified that on October 22, 2006 at around 1:00

p.m. she was on a street on the south side of the City of Saginaw, when she heard

three to four gunshots and ran outside.  She noticed a truck going down Grant Street

with two men inside.  The man in the passenger side of the truck had a gun, and Greer

saw a young man whom she knew by the name of "Six-Nine" lying on the ground.  (Tr.

II, pp. 93-97).

Dr. Kanu Virani testified that he performed the autopsy on Deandre Stewart and

determined that the cause of death was multiple gunshot wounds.  (*Id.,* pp. 36-37)

2

Officer Addison Burton of the Saginaw Police testified that he was dispatched to Grant Street, where he observed the victim lying face down in a field with a wound to the left side of his face. Officer Burton received information that a green truck with junk in the back had been involved in the shooting, but he did not receive the names of any suspects. Officer Burton testified that he was aware of the gang activity in Saginaw. The south side gang is known as "Sunny Side." Officer Burton also testified that he knew Petitioner and was aware that he lived on the northeast side of town and was affiliated with the Projects gang. Officer Burton testified that the relationship between the north side gangs and the south side gangs is characterized by hatred and violence. (*Id.,* pp. 51-53, 56-57, 60-63).

Willard Jacque, an admitted crack cocaine user, testified that on the morning of the shooting, he encountered Petitioner at around 11:00-11:30 a.m. Petitioner asked Jacque if he could borrow his truck in exchange for three rocks of crack cocaine, which Jacque smoked. Jacque saw Petitioner again at about ten minutes after two in the afternoon. Petitioner informed Jacque that his truck had been stolen, and asked Jacque to call the police and to report the theft. (*Id.*, pp. 113-121).

Sherice Byrd knew both Petitioner and Napoleon Tinsley. Byrd was with Tinsley when he received a telephone call on October 22,2006 sometime before 1:00 p.m., after which Tinsley "took off running." At about 2:00-3:00 the next morning the police came to Byrd's house. Tinsley was with Byrd at that time, and the police arrested him. Byrd gave the police Mr. Tinsley's telephone. Tinsley referred to Petitioner as "Dro" and there was a listing for "Dro" in Tinsley's cell phone. Tinsley called Byrd several days before trial and told her she did not have to go to court to testify in Petitioner's case.

3

2:11-cv-10539-RHC-MAR   Doc # 7   Filed 10/31/12   Pg 4 of 31   Pg ID 963

Byrd testified that she did not know that Tinsley intended to admit at Petitioner's trial that he committed the murder. (*Id.,* pp. 157-69).

According to the testimony of Isiahia Davis—who testified in connection with a plea bargain in which a first-degree murder charge against him was to be reduced to second-degree murder with an agreement that his minimum sentence would not exceed nine years—Petitioner and Napoleon Tinsley were associated with a gang called the Projects and Davis was associated with a gang called the Zone Four. Davis said that members of Zone Four did not ordinarily get along with the members of the Projects.

On October 22, 2006, Davis "waved down" Petitioner for a ride in his truck. Petitioner asked Davis to drive. Davis saw a rifle in the vehicle, and Petitioner informed Davis that "his brother had just got killed." Indeed, on August 24, 2006, Petitioner's half-brother, Antwan Jones, had been murdered while he was backing out of his driveway. (Tr. IV, pp. 5-6, 9; Tr. V, p. 15). Petitioner told Davis that he wanted to do a drive-by shooting, apparently in response. When Davis replied that he did not want to be involved, Petitioner told him to get out of the truck. Davis did not, he said, because they were on the south side of town and he would likely be shot as a member of a rival gang from the north side of Saginaw.

David and Petitioner continued driving until they saw the victim, Stewart. Petitioner directed Davis to stop the vehicle. Petitioner said to Stewart, "what's up." When the victim turned to face the vehicle, Petitioner began shooting, and then directed Davis to drive off. Davis asked Petitioner why he shot the man, and Petitioner responded that "they killed my brother." The men went to row of townhouses and parked in back, where they wiped down the inside of the vehicle. The men

4

subsequently got into another vehicle with an individual Petitioner identified as "Po." He took them to his house. Davis admitted that when he first spoke to the police, he didn't "tell it straight." (*Id.*, pp. 178-184; 189-201; 206-07, 211-214).

Kimberly Riley testified that Napoleon Tinsley was her nephew and that he went by the name of "Po." Riley observed Tinsley get into the passenger side of a bluish green pickup truck with junk in back on October 22, 2006. She was not aware that the truck had been involved in a shooting. (*Id.,* pp. 73-77).

Officer John Williams testified that on October 22, 2006 he received a dispatch involving a shooting with a green pickup truck. Officer Williams went to the townhouses to look for the vehicle. Officer Williams was informed at the guard shack that a green pickup truck with junk in the back had passed into the townhouses a few minutes earlier. He found a truck which matched the description and saw an assault weapon on the passenger side. He had the vehicle impounded. Officer Williams also knew Petitioner from the north side of Saginaw. (*Id.,* pp. 84-90; 96-97).

David Favorite testified that he knew both Petitioner and Napoleon Tinsley. On October 22, 2006, he gave Napoleon Tinsley permission to use his burgundy colored Malibu automobile. (*Id.*, pp. 104-07).

Oscar Lopez, a Saginaw police officer who focused on gang activity, knew that Petitioner was associated with a gang called the Project Boys. Officer Lopez located the Chevy Malibu as part of the investigation in this case, and found and arrested Petitioner. Officer Lopez had seen Petitioner associate with Napoleon Tinsley, and said that it would be "deadly" for a north sider to walk down the street on the south side of Saginaw. (*Id.,* pp. 113-24).

5

Following his arrest, Petitioner told the police that he was with Napoleon Tinsley from 1:00 to 1:30 p.m. on the afternoon of October 22, 2006 (Tr. IV, p. 187), but at trial, Izasha Gardner, Petitioner's girlfriend's sister, testified that Petitioner was with her at her house that day until 2:45 p.m.  (Tr. V., pp. 55-56).

Napoleon Tinsley testified that he got into a green truck driven by one "Jason Dubard" around 11:00 a.m.  Tinsley testified that he had borrowed the truck from "the crackhead" around 8:00 a.m. earlier that day.  (Tr. IV, pp. 27-28.)  He originally told the police that Petitioner was the person who picked him up and that he had seen Petitioner take a gun out of a blue barrel behind the Fairway Market.  (*Id.,* pp. 31, 164-65).

Through an oversight, Tinsley and Petitioner had been housed together in jail for over two months before trial.  Tinsley admitted that he and Petitioner are "best friends." (*Id.,* pp. 67-68, 70.)  Tinsley testified at trial that he, not Petitioner, was the passenger in the truck that Davis drove, and that he, not Petitioner, was the shooter.  (*Id.,* pp. 34-35.) However, Tinsley's testimony at Petitioner's trial directly conflicted with Tinsley's testimony under oath at the preliminary examination in the district court, as well as with Tinsley's statements that he gave the police, in which he indicated that Petitioner was the shooter.  (*Id.,* pp. 11-71).

Detective Carlson was the primary investigator in this case.  (*Id.,* p. 142). Petitioner's name first came up in regard to the murder investigation through Napoleon Tinsley.  Tinsley told Carlson that Petitioner was the shooter and Davis was the driver. (*Id.,* pp. 154, 165).  Carlson had met with Napoleon Tinsley many times, but Petitioner's trial was the first time that Tinsley told Carlson that he was the shooter.  (*Id.,* p. 163). Detective Carlson's notes of his conversation with Napoleon Tinsley were admitted into

evidence. (*Id.*, p. 166). After Petitioner was arrested, Detective Carlson was notified that Davis wanted to speak to him. Davis implicated Petitioner in the shooting. Davis' videotaped statement that he made to Detective Carlson was played to the jury. *(Id.*, p. 167-168). Detective Carlson testified that Isiahia Davis had complained of threats made against him and the same day that Davis was interviewed his girlfriend was shot. Carlson testified that he had investigated whether Petitioner was involved in her shooting. Petitioner objected to that statement and moved for a mistrial which was denied, but generated a jury instruction to disregard the particular questions and answers. (*Id.,* pp. 173-79).

Petitioner was convicted and the conviction was affirmed on appeal. *People v. Carr,* No. 286086 (Mich. Ct.App. December 15, 2009); *leave to appeal denied at* 781 N.W.2d 821 (Mich. 2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. DEFENDANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS AND TO A FAIR TRIAL UNDER THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION AND UNDER THE MICHIGAN CONSTITUTION 1963 Art 1, § 17 WHEN THE TRIAL COURT ALLOWED THE CHARGE OF FIRST-DEGREE PREMEDITATED MURDER TO GO TO THE JURY IN THE ABSENCE OF EVIDENCE SUFFICIENT TO PERSUADE ANY RATIONAL TRIER OF FACTS TO FIND ESTABLISHED BEYOND A REASONABLE DOUBT THE ELEMENTS OF THE CRIME CHARGED.

II. THE PROSECUTION COMMITTED MISCONDUCT AND VIOLATED DEFENDANT'S UNITED STATES CONSTITUTIONAL V & XIV RIGHTS TO DUE PROCESS WHEN HE FAILED AND/OR REFUSED TO DISCLOSE THE DEALS AND/OR AGREEMENTS MADE WITH THE CO-DEFENDANT AND ANOTHER WITNESS.

III. DEFENDANT WAS DEPRIVED OF HIS U.S. CONST. XIV AMENDMENT RIGHTS TO DUE PROCESS WHEN AFRO-AMERICANS WERE EXCLUDED FROM THE JURY.

7

IV. THE TRIAL COURT VIOLATED DEFENDAN-APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL, WHEN THE TRIAL COURT DENIED DEFENDANT-APPELLANT'S MOTION FOR A MISTRIAL, BASED ON THE ADMISSION OF PREJUDICIAL EVIDENCE OF ALLEGED PRIOR BAD ACTS.

V. THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING PREJUDICIAL HEARSAY EVIDENCE AT TRIAL.

VI. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO PREJUDICIAL AND INADMISSIBLE HEARSAY STATEMENTS.

VII. DEFENDANT-APPELLANT WAS DEPRIVED OF HIS DUE PROCESS AND FAIR TRIAL RIGHTS UNDER THE XIV AMENDMENT OF THE UNITED STATES CONSTITUTION AND MICHIGAN CONSTITUTION 1963, ART 1, § 17, WHEN THE COURT OF APPEALS RULED THAT THE TRIAL COURT HAD NOT ERRED IN ALLOWING THE SUBMISSION OF FIRST-DEGREE MURDER AND CONSPIRACY TO COMMIT FIRST-DEGREE MURDER CHARGE(S) TO GO TO DEFENDANT-APPELLANT'S JURY, IN THE ABSENCE OF SUFFICIENT EVIDENCE ESTABLISHING EVERY ELEMENT OF THE CHARGED CRIMES.

## II.  STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

 A decision of a state court is "contrary to" clearly established federal law if the

8

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly."  *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

'highly deferential standard for evaluating state-court rulings,'and 'demands that

state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 130 S. Ct.

1855, 1862 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford

v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131

S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The

Supreme Court has emphasized "that even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable." *Id.*  (citing *Lockyer v. Andrade,*

538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must

determine what arguments or theories supported or...could have supported, the state

court's decision; and then it must ask whether it is possible fairminded jurists could

9

disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III. DISCUSSION

#### A.  Claims # 1 and # 7.  The sufficiency of evidence claims.

In his first and seventh claims, Petitioner argues that there was insufficient evidence to convict him of first-degree premeditated murder and conspiracy to commit first-degree murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable

10

application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).

"Because rational people can sometimes disagree, the inevitable consequence of this

settled law is that judges will sometimes encounter convictions that they believe to be

mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas

court reviewing a state court conviction, "the only question under *Jackson* is whether

that finding was so insupportable as to fall below the threshold of bare rationality."

*Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Petitioner's primary argument is that there was insufficient evidence to convict

him of these crimes because the two primary witnesses against him, Willard Jacque

and Isiahia Davis, were not credible witnesses.  The Michigan Court of Appeals

rejected this argument, on the ground that questions concerning the credibility of a

witness "are left to the trier of fact" and that in resolving a sufficiency of evidence claim,

the Court "must resolve credibility choices in favor of the jury's verdict." *Carr,* Slip. Op.

at * 4.  The Michigan Court of Appeals further noted that the jury's verdict was

supported by evidence that Petitioner had obtained the truck used in the drive-by

shooting in exchange for crack cocaine and then subsequently failed to return the

vehicle and told the owner to report that it had been stolen.  The Michigan Court of

Appeals also observed that Davis testified that Petitioner fired an assault rifle at the

victim several times.  The Michigan Court of Appeals concluded that this evidence was

sufficient to establish the necessary elements of the charged offenses.  *Id.*

On habeas review, a federal court does not reweigh the evidence or

redetermine the credibility of the witnesses whose demeanor was observed at trial.

*Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to

11

weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses.  *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).  To the extent that Petitioner is attacking the credibility of the witnesses to claim that the evidence is legally insufficient, he would not be entitled to habeas relief.  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002) (internal citation omitted).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*

Petitioner further argues that the witnesses' testimony, even if believed, failed to establish the elements of first-degree murder and conspiracy to commit first-degree murder.

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated.  *Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992)).  The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing.  *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing to *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995)).  Premeditation may be established through evidence of the following factors:

      1. the prior relationship of the parties;
      2. the defendant's actions before the killing;
      3. the circumstances of the killing itself;
      4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 531 N.W. 2d at 786.

Under Michigan's first-degree murder statute, the interval between the thought and action should be long enough to give a reasonable person sufficient time to subject his or her actions to a "second look" in order to prove premeditation and deliberation. *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003) (citing to *People v. Morrin,* 187 N.W. 2d 434 (Mich. Ct. App. 1971)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Id.* Therefore, a sufficient time lapse to provide an opportunity for a "second look" may be merely seconds, minutes, or hours or more, dependant on the totality of the circumstances surrounding the killing. *People v. Berthiaume*, 229 N. W. 2d 497, 500 (Mich.Ct.App.1975). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *People v. Berry*, 497 N.W.2d 202, 204 (Mich. Ct. App. 1993).

In this case, there was ample evidence of premeditation and deliberation to support Petitioner's conviction for first-degree murder. Davis's testimony demonstrated that Petitioner suggested that he wanted to commit a drive-by shooting against a person whom he believed to be a member of a rival gang in order to avenge his half-brother's murder. This well supported an inference of premeditation and deliberation.

*See e.g. Puckett v. Costello,* 111 Fed. App'x. 379, 383-84 (6th Cir. 2004). The evidence established that the victim was shot multiple times. The firing of multiple gunshots at the victim was sufficient to establish premeditation and deliberation. *See Crawley v. Curtis*, 151 F. Supp. 2d 878, 888-89 (E.D. Mich. 2001). Testimony at trial established that following the murder, Petitioner attempted to hide the truck that had been used during the drive-by shooting and had wiped down the vehicle, presumably to remove fingerprints. Petitioner did not return Jacque's truck and asked him to report to the police that the truck had been stolen. Petitioner also left the assault rifle behind in the truck. Evidence that Petitioner disposed of evidence in an attempt to conceal the crime would also support a finding of premeditation and deliberation. *See Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004). Under the circumstances, any rational trier of fact could conclude that the elements of premeditation and deliberation had been established beyond a reasonable doubt.

There was also sufficient evidence to convict Petitioner of conspiracy to commit first-degree murder.

Under Michigan law, conspiracy is an agreement, either express or implied, between two or more persons to commit an unlawful or criminal act. *People v. Weathersby*, 514 N. W. 2d 493, 501 (Mich. Ct. App. 1994). Because conspiracy is a specific intent crime, it requires both an intent to combine with others and the intent to accomplish the illegal objective. *People v. Carter*, 330 N.W.2d 314, 319 (Mich. 1982). Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*, 478 N. W. 2d 681, 688 (Mich.Ct.App.

14

1991).  A conspiracy may be proven by circumstantial evidence or may be based on inference.  *Id.* at 689.

Under Michigan law, "[t]o prove conspiracy to commit murder, it must be demonstrated that each conspirator had the requisite intent to commit the murder." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004) (quoting *People v. Buck*, 496 N.W.2d 321, 327 (Mich.Ct.App. 1992), *rev'd in part on other grounds sub nom.  People v. Holcomb*, 508 N.W.2d 502 (Mich. 1993)).  "The prosecution must demonstrate that the conspirators deliberated and planned the crime with the intent to kill the victim."  *Id.*

Here, there was sufficient evidence to establish that Petitioner conspired with other persons to kill the victim.  Petitioner told Davis that he wanted to commit a drive-by shooting and directed him to drive the truck over to where the victim was standing, before firing the weapon.  Davis subsequently drove Petitioner from the area and helped him hide the truck and wipe it down for fingerprints.  From this evidence, the jury could have concluded beyond a reasonable doubt that a conspiracy existed between Davis and Petitioner to kill the victim, so as to support Petitioner's conviction for conspiracy to commit murder.  *Cameron,* 348 F. Supp. 2d at 840.  To the extent that Petitioner argues that any conspiracy was eradicated by Davis' claim that he had acted under duress when he assisted Petitioner with this crime, duress is not a defense to murder in Michigan and would thus not negate Davis' involvement in the conspiracy. *See People v. Dittis,* 403 N. W. 2d 94, 95 (Mich. Ct. App. 1987); *see also Gimotty v. Elo,* 40 Fed. App'x. 29, 32 (6th Cir. 2002).  Petitioner is thus not entitled to relief on his first and seventh claims.

15

**B.  Claims # 2 and # 3.  The procedurally defaulted claims.**

The court will discuss Petitioner's second and third claims together for better clarity.  Petitioner alleges in his second claim that the prosecutor denied him his right to a fair trial by refusing to fully disclose all of the deals or agreements that had been made with Davis and Jacque to obtain their testimony against Petitioner.  In his third claim, Petitioner contends that his right to a fair trial was violated because African-Americans were excluded from his jury panel.  Respondent contends that Petitioner's second and third claims are procedurally defaulted because he failed to raise these claims in his application for leave to appeal to the Michigan Supreme Court.

A habeas petitioner procedurally defaults a claim if he fails to raise it in an application for discretionary review with the state's highest court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  A claim raised in the state court of appeals but not in the state supreme court cannot be considered in federal habeas review.  *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).

Petitioner raised his second and third claims in his direct appeal to the Michigan Court of Appeals.  However, a review of the application for leave to appeal that Petitioner filed with the Michigan Supreme Court following the affirmance of his conviction by the Michigan Court of Appeals shows that Petitioner failed to raise these two claims in his application for leave to appeal to the Michigan Supreme Court.[8]  By failing to seek discretionary review of these claims in the Michigan Supreme Court, Petitioner has procedurally defaulted these claims.  *Harris,* 157 F. Supp. 2d at 750.

---

[8]  *See* Dkt. Entry ## 6-15.

16

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If Petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue.  *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default.  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Petitioner has offered no excuse for his failure to raise his second and third claims in his application for leave to appeal before the Michigan Supreme Court.  The fact that Petitioner had to represent himself on his discretionary appeal with the Michigan Supreme Court would not excuse the default.  A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals. *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982).  In a criminal proceeding in which a habeas petitioner does not have a constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  *See Coleman*,

17

501 U.S. at 752-53.  Because Petitioner had no constitutional right to the effective assistance of counsel in filing an application for leave to appeal with the Michigan Supreme Court, the fact that Petitioner did not have appellate counsel to help him file an application for leave to appeal would not establish the "cause" required to overcome the procedural default of Petitioner's claims which he raised on his direct appeal with the Michigan Court of Appeals, but failed to raise in the Michigan Supreme Court.  *See Harris v. Stegall,* 157 F. Supp. 2d at 750.

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default.  Petitioner's sufficiency of evidence claims are insufficient to invoke the actual innocence doctrine to the procedural default rule.  *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Petitioner has attached to his petition an affidavit from Isiahia Davis dated December 1, 2010, in which Davis recants his trial testimony and claims that Napoleon Tinsley was the shooter.  Recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991); *see also Byrd v. Collins,* 209 F. 3d 486, 508, n. 16 (6th Cir. 2000).  Furthermore, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence."  *Schlup v. Delo,* 513 U.S. at 332.

Davis did not sign his recanting affidavit until December 1, 2010, which was more than two years after Petitioner was convicted of this crime.  The purported affidavit does not offer any convincing explanation as to why Davis waited more than

18

two years to recant his trial testimony.  *See Lewis v. Smith,* 100 Fed. App'x. 351, 355

(6th Cir. 2004) (proper for district court to reject as suspicious a witness' recanting

affidavit made two years after petitioner's trial); *see also Strayhorn v. Booker,* 718 F.

Supp. 2d 846, 874 (E.D. Mich. 2010) (long-delayed affidavit of accomplice recanting

statement to police did not establish petitioner's actual innocence where it was made

almost two years after petitioner's trial).  Moreover, this affidavit, as is the case with

many similar after-the-fact affidavits, is highly suspicious. Davis's recantation came

years after Davis had received his plea bargain for testifying against Petitioner and had

already been sentenced and thus had nothing to lose by recanting.  *Strayhorn,* 718 F.

Supp. 2d at 874.  It is significant as well that Davis remains now in prison for his

involvement in this murder, thereby subject to all the peer influence that may be

brought to bear on a current inmate who offered testimony again a fellow inmate who is

himself now a "lifer."[9]  Jailhouse recantations usually lack any meaningful indicia of

reliability and are "properly regarded as 'highly suspicious.'" *United States v. Connolly,*

504 F.3d 206, 215 (1st Cir. 2007) (internal quotation omitted).  Because recantation

testimony is regarded with "extreme suspicion," Davis' affidavit is not the type of

"reliable evidence" that could establish Petitioner's actual innocence to excuse his

default. *See Carter v. Mitchell,* 443 F.3d 517, 539 (6th Cir. 2006).

        Because Petitioner has not presented any new reliable evidence that he is

innocent of these crimes, a miscarriage of justice will not occur if the court declined to

---

[9]  This information, from the Michigan Department of Corrections' Offender Tracking Information System (OTIS), is suitable for judicial notice. *See Ward v. Wolfenbarger,*323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004).

19

review Petitioner's second and third procedurally defaulted claims on the merits. *See*
*Welch v. Burke*, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999). Petitioner is not entitled
to relief on these claims.

### C.  Claim # 4.  The failure to declare a mistrial claim.

Petitioner next contends that the trial court erred in failing to declare a mistrial
after Detective Carlson testified that Isiahia Davis had complained of threats made
against him and that the same day that he was interviewed his girlfriend was shot.
Carlson testified that he investigated whether Petitioner was involved in her shooting.
Petitioner objected and moved for a mistrial. The trial court denied the motion for
mistrial and sustained the objection by instructing the jury to disregard the last two
questions and answers.

A trial court has the discretion to grant or deny a motion for mistrial in the
absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F.3d 432, 436 (6th
Cir. 2007); *see also Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

In the present case, Detective Carlson's brief testimony that he had investigated
Petitioner for being involved in the shooting of Davis' girlfriend was not so prejudicial as
to require a mistrial, in light of the fact that the judge ordered that the testimony be
stricken from the record and the prosecutor never raised the issue again during the
trial. *United States v. Crider*, 144 Fed. App'x. 531, 534-35 (6th Cir. 2005) (holding the
defendant was not entitled to a mistrial following an unprompted statement from
government witness concerning the defendant's involvement in a homicide, where
statement was not exceptionally prejudicial, and trial court gave curative jury instruction
advising jury to disregard the statement); *United States v. Beamus,* 110 Fed. App'x.

20

513, 517 (6th Cir. 2004) (testimony that defendant was "on the run" from probation was not *pre se* prejudicial, so as to warrant mistrial, where jury immediately told to disregard that single, isolated remark ); *United States v. Harris*, 165 F.3d 1062, 1066 (6th Cir. 1999) (police officer's allusion to defendant's prior arrest did not require a new trial since it was isolated and district court gave an immediate curative instruction); *United States v. Forrest*, 17 F. 3d 916, 920 (6th Cir.1994) (court did not abuse its discretion in not granting defendant's motion for mistrial, though agent's statement regarding defendant's previous incarceration directly contravened judge's specific warning, where judge provided clear admonition).  Moreover, the judge's final instructions to the jury advised them not to consider anything that had not been admitted into evidence.  A jury must be presumed to have followed a trial court's instructions. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000).  In light of the fact that Carlson's testimony about investigating Petitioner for his involvement in the shooting of Davis' girlfriend was brief, as well as the fact that the trial judge struck the remarks from the record and later advised the jury not to consider any evidence that had been so stricken, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in rejecting Petitioner's fourth claim.

### D.  Claim # 5.  The hearsay evidence claim.

Petitioner next contends that the trial court erred in admitting impermissible hearsay evidence at his trial.  Petitioner specifically contends that the trial court erred in allowing Napoleon Tinsley's prior inconsistent statements to Detective Carlson to be improperly admitted as substantive evidence, rather than to impeach his testimony. Petitioner further contends that the trial court erred in admitting Isiahia Davis'

21

videotaped statement to the police, because it was made after Davis had a motive to falsify charges against Petitioner.

Respondent contends that this claim is procedurally defaulted because Petitioner failed to object to the admission of this testimony at trial. Petitioner argues in his sixth claim that trial counsel was ineffective for failing to object to the admission of this evidence. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d at 836.

As an initial matter, the admission of the out of court statements did not violate Petitioner's Sixth Amendment right to confrontation, because Tinsley and Davis both testified at trial and were subject to cross-examination. There is no Confrontation Clause problem when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988). As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted). Because Tinsley and Davis testified at Petitioner's trial and were subject to cross-examination, the admission of

22

their out of court statements did not violate Petitioner's Sixth Amendment right to confrontation. *See Shannon v. Berghuis,* 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008).

To the extent that Petitioner alleges that this evidence was admitted in violation of Michigan law, he would not be entitled to relief.  It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

The Michigan Court of Appeals rejected Petitioner's allegation that Tinsley's prior inconsistent statements had been offered as substantive evidence, ruling that the prior inconsistent statements had been properly offered pursuant to M.R.E. 613(b) to impeach Tinsley's trial testimony. *Carr,* Slip. Op. at * 3-4.  Thus, Petitioner's contention that Tinsley's prior inconsistent statements had been admitted as substantive evidence is without merit.  Moreover, even if Tinsley's prior inconsistent statements were admitted as substantive evidence, this would not entitle Petitioner to habeas relief.  The use of a witness' prior inconsistent statement as substantive evidence, and not merely for impeachment purposes, is not an error of constitutional dimension.  *See Isaac v. United States,* 431 F. 2d 11, 15 (9th Cir. 1970).  Therefore, any claim involving the improper admission of Tinsley's prior inconsistent statements is not cognizable in a federal habeas corpus proceeding.  *See e.g. Bolton v. Nelson,* 426 F. 2d 807, 809 (9th Cir.  1970) (whether procedure followed by state court in permitting use of prior

23

inconsistent statement was in violation of state decisional rule was not matter for federal district court to decide, on petition for habeas corpus); *see also Roland v. Mintzes,* 554 F. Supp. 881, 890 (E.D. Mich. 1983) (alleged misapplication of state law in impeachment by prosecutor of petitioner's accomplice with prior inconsistent statements was not cognizable in federal habeas corpus proceedings).

Likewise, Petitioner's claim about the admission of prior consistent statements that Davis made to the police in his videotaped statement involves at best an error of state law that is not cognizable in federal habeas review.  *See Regan v. Hoffner,* 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002).  Because the admission of Davis' prior consistent statements did not deprive Petitioner of a fundamentally fair trial, Petitioner is not entitled to habeas relief on his fifth claim.  *See Benton v. Booker,* 403 Fed. App'x. 984, 986 (6th Cir. 2010).

### E. Claim # 6.  The ineffective assistance of counsel claim.

Petitioner lastly contends that he was denied the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two prong test.  First, the petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Strickland,* 466 U.S. at 689.  Second,

24

the petitioner must show that such performance prejudiced his defense. *Id.* To

demonstrate prejudice, the petitioner must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a

demanding one. 'The likelihood of a different result must be substantial, not just

conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting

*Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the

burden on the petitioner who raises a claim of ineffective assistance of counsel, and

not the state, to show a reasonable probability that the result of the proceeding would

have been different, but for counsel's allegedly deficient performance. *See Wong v.

Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court

believes the state court's determination' under the *Strickland* standard 'was incorrect

but whether that determination was unreasonable-a substantially higher threshold.'"

*Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*,

550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's

application of the *Strickland* standard was unreasonable. This is different from asking

whether defense counsel's performance fell below *Strickland's* standard." *Harrington v.

Richter*, 131 S.Ct. at 785. Indeed, "because the *Strickland* standard is a general

standard, a state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard." *Knowles,* 129 S.Ct. at 1420 (citing

*Yarborough*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential

judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This

2:11-cv-10539-RHC-MAR   Doc # 7   Filed 10/31/12   Pg 26 of 31   Pg ID 985

means that on habeas review of a state court conviction, "[A] state court must be

granted a deference and latitude that are not in operation when the case involves

review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.

"Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v.*

*Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated

that:

> Federal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether counsel's actions were
> reasonable. The question is whether there is any reasonable argument that
> counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit

of the doubt, but must also affirmatively entertain the range of possible reasons that

counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct.

1388, 1407 (2011).

Finally, this court is aware that "[R]eliance on 'the harsh light of hindsight' to cast

doubt on a trial that took place" over four years ago "is precisely what *Strickland* and

AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner first contends that his trial counsel was ineffective for failing to object

to the use of Tinsley's prior inconsistent statements to Detective Carlson as

substantive evidence.

As mentioned when discussing Petitioner's fifth claim, *supra,* the Michigan Court

of Appeals determined that Tinsley's prior inconsistent statements were properly used

26

to impeach Tinsley's trial testimony and not as substantive evidence.  Because there is

no indication that the prosecutor used Tinsley's prior inconsistent statement as

substantive evidence, the Michigan Court of Appeals' rejection of Petitioner's

ineffective assistance claim was not an unreasonable application of *Strickland. See*

*e.g. Cyars v. Hofbauer,* 383 F. 3d at 491-93.

   Petitioner next contends that trial counsel was ineffective for failing to object to

the admission of Davis' videotaped statement to the police.  The Michigan Court of

Appeals ruled that Davis' videotaped statement was properly admitted as a prior

consistent statement pursuant to M.R.E. 801(d)(1)(B).  *Carr,* Slip. Op. at * 3, n. 3.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of

evidence and procedure' when assessing a habeas petition."  *Miskel v. Karnes*, 397

F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.

1988)).  Because the Michigan Court of Appeals determined that Davis' videotaped

statement was properly admitted under Michigan law as a prior consistent statement,

the court must defer to that determination in resolving Petitioner's ineffective

assistance of counsel claim.  *See Brooks v. Anderson*, 292 Fed. App'x. 431, 437-38

(6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003).  Because

the Michigan Court of Appeals determined that Davis' videotaped statement to the

police was properly admitted under M.R.E. 801(d)(1)(B) as a prior consistent

statement, Petitioner is unable to establish that he was prejudiced by counsel's failure

to object to the admission of this testimony.

   Petitioner lastly contends that trial counsel was ineffective for failing to recall

Davis for further cross-examination after his videotaped statement was played to the

jury during Detective Carlson's testimony.

Petitioner's claim has not been properly exhausted because he did not raise it on his direct appeal with the Michigan Court of Appeals, raising it for the first time in his application for leave to appeal to the Michigan Supreme Court.  Raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Because Petitioner failed to present his claim that counsel was ineffective for failing to recall Davis on his direct appeal with the Michigan Court of Appeals, his subsequent presentation of this claim to the Michigan Supreme Court does not satisfy the exhaustion requirement for habeas purposes.  *See Skinner v. McLemore,* 425 Fed. App'x. 491, 494 (6th Cir. 2011).

The court, however, declines to dismiss the petition on the ground that it contains an unexhausted claim.  A habeas petitioner's failure to exhaust his state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  An unexhausted claim may be addressed if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F. 2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies).  In these circumstances, a federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims.  *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991).  Because Petitioner's remaining claim lacks merit, in the interests of efficiency and justice, the

28

court will address the claim, rather than dismiss the petition on exhaustion grounds.

*Welch v. Burke*, 49 F. Supp. 2d at 998.

Petitioner has failed to show that counsel was deficient in failing to recall Davis
to testify after his videotaped statement had been played to the jury or that he was
prejudiced by counsel's failure to recall Davis.  Davis had only recently testified at
Petitioner's trial.  Counsel had cross-examined Davis at great length about the plea
bargain that he had been offered in exchange for his testimony, about Davis' numerous
inconsistent statements to the police and his initial failure to name Petitioner as the
shooting suspect, and about Davis' failure to go to the police after the shooting.  (Tr. II,
pp. 221-36; 243-44).  Because counsel could have very well reasonably determined
that Davis' testimony was still fresh in the jurors' minds, counsel was not deficient in
failing to recall Davis to testify again after Detective Carlson had played Davis'
videotaped statement.  *See Bell v. Cone,* 535 U.S. 685, 699-700 (2002).  Most
importantly, Petitioner has failed to identify what additional information could have been
elicited from Davis by additional cross-examination.  Because defense counsel was
already able to call into question Davis' credilbility during his cross-examination,
Petitioner is unable to establish that he was prejudiced by counsel's failure to recall
Davis as a witness.  *See Stephens v. Hall,* 294 F. 3d 210, 225-26 (1st Cir. 2002).
Petitioner is not entitled to habeas relief on his sixth claim.

### F.  A Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must
issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A certificate of
appealability may issue "only if the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. at 327.  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the claim. *Id.* at 336–37.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right within his habeas claims. Accordingly, the court will deny Petitioner a certificate of appealability.

## IV. CONCLUSION

30

IT IS ORDERED that Petitioner Henry Louis Carr's petition for writ of habeas corpus [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: October 31, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 31, 2012, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

C:\Documents and Settings\wagner\Local Settings\Temp\notes6030C8\11-10539..CARR.2254.db.2.wpd